UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

GREGORY P. CUNNINGHAM, SR.,

Petitioner,

vs.

JOHN LEMPKE,[1] Superintendent, Five
Points Correctional Facility,

Respondent.

No. 9:06-cv-00659-JKS

MEMORANDUM DECISION

Petitioner Gregory P. Cunningham, Sr., a state prisoner appearing through counsel, filed a petition for habeas corpus relief under 28 U.S.C. § 2254. Cunningham is presently in the custody of the New York Department of Correctional Services, incarcerated at the Five Points Correctional Facility. Respondent has answered the petition, and Cunningham has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

An indictment was filed in Montgomery County charging Cunningham with one count of grand larceny in the second degree (N.Y. Penal Law § 155.40[1]) and 13 counts each of forgery in the second degree (N.Y. Penal Law § 170.10[1]) and criminal possession of a forged instrument in the second degree (N.Y. Penal Law § 170.25). A second indictment was also filed in Montgomery County charging petitioner with two counts each of forgery in the second degree (N.Y. Penal Law § 170.10[1]) and criminal possession of a forged instrument in the second degree (N.Y. Penal Law § 170.25). All of the charges in both of those indictments concern forged checks drawn on the account of Herkimer Precut, Inc. (Herkimer Precut), a business owned by Peter Morat. At the joint trial on those indictments, petitioner contended that the

---

[1] John Lempke, Superintendent, Five Points Correctional Center, is substituted for Thomas Poole, Superintendent, Five Points Correctional Facility. Fed. R. Civ. P. 25(d).

offenses charged in the first indictment had not occurred in Montgomery County.  The County
Court instructed the jury to decide the issue of geographical jurisdiction at the outset of its
deliberations because if the Montgomery County Court lacked jurisdiction, the jury's verdict
"may be void and ineffective."  The jury found that the County Court lacked geographic
jurisdiction with respect to all counts of the first indictment, and so indicated by writing "No
Jurisdiction" at the top of the verdict sheet.  The jury found petitioner guilty only of count two in
the second indictment, charging forgery in the second degree.[2]  Cunningham appealed his
conviction to the Appellate Division, Third Department, which affirmed his conviction by a
divided court.[3]  Upon further appeal, the New York Court of Appeals reversed the conviction and
ordered the indictment dismissed.[4]

An indictment was subsequently filed in Oneida County charging petitioner with one
count of grand larceny in the second degree (N.Y. Penal Law § 155.40[1] ), two counts of grand
larceny in the third degree (N.Y. Penal Law § 155.35), and 19 counts each of forgery in the
second degree (§ 170.10[1] ) and criminal possession of a forged instrument in the second degree
(N.Y. Penal Law § 170.25).  Many of those charges concern checks drawn on an account
maintained by Onondaga Logging, another business owned by Peter Morat.  Eleven of those
charges, however, concern Herkimer Precut checks that were part of the first Montgomery
County indictment on which petitioner previously was tried and the jury found "No Jurisdiction."
Cunningham moved to dismiss the third indictment on the ground that a trial thereon was barred
by the New York statutory prohibition against double jeopardy.  The Oneida County Court
denied the motion, and Cunningham sought a writ of prohibition under N.Y. Civil Practice Law
and Rules Article 78 in the Appellate Division, Fourth Department, on the grounds that the
second trial was barred by the New York statutory prohibition against double jeopardy.  The

---

[2] The foregoing statement in this paragraph taken from the decision of the Appellate Division,
Fourth Department, in  *Matter of Cunningham v. Dwyer*, 754 N.Y.S.2d 499, 500 (N.Y. App. Div.),
*appeal dismissed*, 790 N.E.2d 271 (N.Y.) (Table), *reargument denied*, 796 N.E.2d 478 (N.Y. 2003)
(Table).

[3] *People v. Cunningham*, 763 N.Y.S.2d 328 (N.Y. App. Div), *lv. granted*, 798 N.E.2d 361 (N.Y.
2003) (Table).

[4] *People v. Cunningham*, 813 N.E.2d 891 (N.Y. 2004).

Appellate Division denied the petition, and the New York Court of Appeals dismissed Cunningham's appeal as moot.[5]

After a trial by jury, Cunningham was convicted in the Oneida County Court of grand larceny in the second degree (N.Y. Penal Law § 155.40[1] ), two counts of grand larceny in the third degree (N.Y. Penal Law § 155.35), 19 counts of forgery in the second degree (N.Y. Penal Law § 170.10[1] ) and 19 counts of criminal possession of a forged instrument in the second degree (N.Y. Penal Law § 170.25). The Oneida County Court sentenced Cunningham to an aggregate indeterminate prison term of 17½ to 35 years and ordered restitution in the amount of $63,000.00. Cunningham timely appealed his conviction to the Appellate Division, Fourth Department, which dismissed the 19 counts of possession of forged instruments and affirmed his conviction on the remaining counts; the Court of Appeals denied leave to appeal and his petition for rehearing on June 24, 2005.[6] Cunningham timely filed his petition in this Court on May 30, 2006.

## II.  GROUNDS RAISED/DEFENSES

In his petition Cunningham raises five grounds: (1) denial of effective assistance of counsel; (2) double jeopardy; (3) denial of right to confront witnesses; (4) improper "bolstering" of state witnesses by prosecution; and (5) double jeopardy under New York law.[7] Respondent contends Cunningham's third ground is procedurally barred. Respondent asserts no other affirmative defenses.[8]

## III.  STANDARD OF REVIEW

---

[5] *Matter of Cunningham v. Dwyer, supra*, n.2.

[6] *People v. Cunningham*, 785 N.Y.S.2d 244 (N.Y. App. Div. 2004), *lv. denied*, 829 N.E.2d 677 (N.Y. 2005) (Table), *rehr'g denied*, 834 N.E.2d 1265 (N.Y. 2005) (Table).

[7] In his memorandum of law accompanying the petition, Cunningham alludes to what might be construed as a sixth ground concerning a request for a lesser included offense instruction that is not raised in the petition itself. In reading Cunningham's memo it does not appear that he is requesting any further relief from this court concerning that issue. Indeed, it appears from the argument, as well as the decision of the Appellate Division on direct appeal, that Cunningham obtained his remedy on that point at least in part, by the dismissal of the 19 counts of possession of a forged instrument. As to the other instruction that was refused, a claim of right defense, Cunningham presents no argument in support of it. Consequently, the Court will not address the question of jury instructions.

[8] *See* Rules—Section 2254 Cases, Rule 5(b).

Because the petition was filed after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[9]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[10]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[11]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[12]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[13]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[14]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and

---

[9] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[10] *Williams*, 529 U.S. at 412.

[11] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[12] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, ___, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[13] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[14] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

injurious effect or influence in determining the jury's verdict.[15]  Petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[16]

In applying this standard, this Court reviews the last reasoned decision by the state court.[17]  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[18]

To the extent that Cunningham raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[19]  A federal court must accept that state courts correctly applied state laws.[20]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[21]  A federal court may not issue a habeas writ based upon a perceived error of state law unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[22]

## IV.  DISCUSSION

The Court notes at the outset that the lengthy petition, memorandum of law in support of the petition, and traverse filed by Cunningham (a total of 155 pages) read more like a brief on direct appeal than a petition for federal habeas relief.  In so doing, Cunningham grossly

---

[15] *Fry v. Pliler*, 551 U.S. 112, ___, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[16] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[17] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000).

[18] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[19] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[20] *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[21] *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).

[22] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

misperceives the role of this Court in a federal habeas proceeding.  As noted above, this Court is limited to federal constitutional errors as determined by decisions of the Supreme Court.  In assessing those errors, this Court is also cabined by the requirement that the decision of the state court must not be just incorrect or erroneous, but its interpretation and application of Supreme Court precedent must be objectively unreasonable.

Ground 1:  Ineffective Assistance of Counsel.

Cunningham was represented in the trial court by his brother, Thomas F. Cunningham.[23] The People moved to disqualify Thomas Cunningham on two separate occasions on conflict of interest grounds.  Cunningham opposed the motions.  The second motion was filed March 5 and heard on Thursday, March 6, with trial scheduled to begin on Monday, March 10.  The trial court denied both motions, the second as being untimely.  Counsel for Cunningham also requested an adjournment of the trial so that Cunningham could find substitute counsel, which was also heard on March 6.  The trial court also denied this motion, noting that if Cunningham were to seek counsel on his own, that new counsel should be made aware that trial would begin on Monday, March 10.[24]

On the first day of trial a conference was held in chambers to discuss *in limine* motions. Following the in-chambers conference, the Court conducted a discussion on the record as to what was discussed in chambers.  Defense counsel stated that the prosecutor, while in chambers, had threatened him with indictment for activities related to Cunningham's case.  Defense counsel noted that the prosecutor told him that she would consider conspiracy charges against members of Cunningham's family, including defense counsel, if Cunningham didn't accept his responsibilities.  Counsel contended this insinuated that if Cunningham would not accept the plea agreement on the table, the Prosecutor would seek indictment of other family members, including Cunningham's wife, daughter, and defense counsel.  Defense Counsel contended that a threat loomed over the entire trial that impeded his ability to continue to represent the defendant.

---

[23] Who is also representing Cunningham in these proceedings.

[24] In his petition, Cunningham contends he "had a substitute attorney the following week." Docket No. 1, p.6.  Cunningham also asserts in a footnote in his memorandum of law that he had found substitute counsel, and he was available almost immediately.  Docket No. 3, p. 27 n.6.  The reference to the record does not support either statement.

Consequently, counsel moved to withdraw from the case due to a conflict of interest.  The Oneida County Court denied counsel's request, and the Appellate Division on direct appeal rejected Cunningham's position, holding:

> In response to a motion brought by the People a year before trial to disqualify defense counsel, the court adequately and properly inquired of defendant and his counsel regarding conflicts and properly determined that defendant had an awareness of the potential risks involved and knowingly chose to proceed with his counsel.  Defendant, on the eve of trial, moved for an adjournment to allow him time to retain new counsel.  We conclude the court did not abuse its discretion in denying defendant's motion.  In any event, the record does not establish that the alleged conflicts bear a substantial relation to the conduct of the defense.[25]

Under *Strickland*,[26] to demonstrate ineffective assistance of counsel, Cunningham must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[27]  Counsel's performance is deficient when counsel makes errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[28]  Cunningham must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[29]

As the Second Circuit recently observed *vis-a-vis* attorney conflicts:

> *Strickland* made clear that even if counsel's performance is found professionally unreasonable, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland,* 466 U.S. at 692, 104 S. Ct. 2052.  Therefore, the question becomes "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695, 104 S. Ct. 2052.  In certain circumstances, however, prejudice may be presumed, and an individual inquiry regarding this factor is unnecessary.  *See id.* at 692, 104  S.Ct. 2052

---

[25] *People v. Cunningham*, 785 N.Y.S.2d 244, 245–46 (N.Y. App. Div. 2004) (citations omitted), *lv. denied*, 829 N.E.2d 677 (N.Y. 2005) (Table), *rehrg denied*, 834 N.E.2d 1265 (N.Y. 2005) (Table).

[26] *Strickland v. Washington*, 466 U.S. 668 (1984).

[27] *Id.* at 687

[28] *Id*.

[29] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

(noting that where a defendant shows "actual or constructive denial of assistance of counsel . . . [or] state interference with counsel's assistance . . . prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost").  Similarly, the Supreme Court has recognized that when a criminal defendant claims that defense counsel was "burdened by an actual conflict of interest," this warrants a "limited presumption of prejudice."  *Id.*  In these instances, the presumption of prejudice attaches "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"  *Id.* at 692, 104 S.Ct. 2052 (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L.Ed.2d 333 (1980)).

Though the *Sullivan* presumption has been "unblinkingly" applied to "all kinds of alleged attorney ethical conflicts," *Sullivan*'s discussion of it does not support this expansive application.  *Mickens v. Taylor,* 535 U.S. 162, 174, 122 S. Ct. 1237, 152 L.Ed.2d 291 (2002).  The Supreme Court made clear in *Mickens* that the presumption was created to account for the "high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice." *Id.* at 175, 122 S.Ct. 1237.  However, "[n]ot all attorney conflicts present comparable difficulties."  *Id.*; *see also Smith v. Hofbauer,* 312 F.3d 809, 816 (6th Cir. 2002) (citing *Mickens,* 535 U.S. at 175-76, 122 S. Ct. 1237) (remarking that *Sullivan* has "never been extended by the Supreme Court to conflicts other than joint representation").[30]

Initially, the Court must identify the nature of the conflict: actual or potential.  It is undisputed that counsel was never charged with any criminal offense arising out Cunningham's conduct underlying the criminal charges against him.  Cunningham does not argue that any of the evidence introduced at trial, directly or indirectly, implicated counsel as a participant in the conduct underlying the criminal charges for which Cunningham was being tried.  Cunningham argues:

> Attorney Cunningham would have called himself as a witness to introduce the Business Plan into evidence, but could not because "I spent almost half of my summary detailing and reading excerpts from sworn testimony of Mr. Morat in two trials that contradicted each other.  So, I have no idea what he may have said.  I was not prepared to risk my client and myself in trying to be a witness . . . ." (A.382).  Moreover, calling himself as a witness would have exposed Attorney Cunningham to cross-examination by the prosecution, which may well have resulted, not only in testimony adverse to his own client, but in further risk of indictment for himself.  As such, defense counsel was prevented by the

---

[30] *Torres v. Donnell*y, 554 F.3d 322, 325–26 (2d Cir. 2009).

impossibility of his own situation as well as the "advocate-witness" rule, from acting as a witness during this trial.[31]

In order to prevail under extant Supreme Court precedent, Cunningham must show that his defense was prejudiced by what is properly characterized as a potential, not actual, conflict. Cunningham has failed to meet this burden. That counsel would have called himself as a witness, the only prejudice claimed, rings hollow. First, there is no offer of proof as to what testimony counsel might have offered, or its relevance to Cunningham's guilt or innocence. In particular, Cunningham fails to explain how counsel could have introduced the business plan (described as being between Cunningham and the victim) into evidence or even that his testimony was necessary to that end, *i.e.*, that it could not have been introduced through the testimony of the complaining witness, Peter Morat.[32] Second, both alleged impediments to counsel's testimony were, or should have been, well known to counsel prior to trial. It defies logical explanation that counsel was not fully aware of his own involvement in or knowledge of Cunningham's criminal conduct from the outset. The prosecutor's alleged threat of prosecution, whether real or perceived, did not change the situation. Counsel must also have known that any potential testimony he would give might be adverse to his client.[33]

Cunningham also claims that, because of the prosecutor's threats of prosecution against his family members, counsel was unable to call Cunningham's daughter to testify because counsel had once represented the daughter and the prosecutor's threat against her created a real conflict. Other than this conclusory allegation, how the fact that counsel had previously represented the daughter in an unidentified unrelated matter created a conflict that precluded her

---

[31] Docket No. 3, p. 26 (footnote omitted).

[32] By his own admission counsel only had a copy of the business plan he received with a letter. How counsel could have authenticated that letter through his testimony is unexplained and inexplicable.

[33] Counsel does not even hint at how he might have given testimony adverse to his client. In fact, in opposing the People's motions, counsel initially represented that he saw no reason why he would be called as a witness and that he had no knowledge of any testimony he might give that would be detrimental to Cunningham.

being called as a witness is unexplained.[34]  This is not a case of multiple concurrent representations to which the presumption of prejudice was intended to apply.[35]

Finally, Cunningham does not contend that he did not receive a vigorous defense, nor does he point to any errors committed by defense counsel.  In short, Cunningham has failed to establish either the existence of an actual, existing conflict or any prejudice resulting from the denial of his eleventh-hour, eve of trial motion to substitute counsel.

This Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[36]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade-Williams-Schriro*; *i.e.*, the state court's decision was more than incorrect or erroneous; its application of clearly established law was objectively unreasonable.[37] Cunningham has failed to establish that, as required by *Strickland-Hill*, his defense was prejudiced.  Cunningham is not entitled to relief under his first ground.

Ground 2:  Double Jeopardy (Federal).

Cunningham contends that the second trial in the Oneida County Court constituted a violation of the Double Jeopardy Clause.  On direct appeal the Appellate Division summarily rejected Cunningham's arguments, simply holding "that the trial was not barred by double

---

[34] What is most puzzling is that the daughter had already testified in the Montgomery County trial.  Testimony that Cunningham contends was instrumental in the "favorable" jury verdict.  Since the daughter was already on record under oath as to her activities in connection with Cunningham's alleged criminal conduct, the People already had whatever evidence they may have needed to bring criminal charges against her and had apparently declined to do so.  Cunningham has not made a proffer regarding "different" testimony the daughter may have presented had she been called in the instant case.  Hence the Court must assume that her testimony would have been identical.

[35] *See Mickens v. Taylor,* 535 U.S. 162, 175 (2002).

[36] 28 U.S.C. § 2254(d).

[37] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

jeopardy," citing the earlier decision in Cunningham's Article 78 proceeding.[38]   In denying Cunningham's Article 78 petition, the last reasoned decision addressing the double jeopardy issue, the Appellate Division held:

> We reject petitioner's contention that a trial on the Oneida County indictment is barred by the statutory prohibition against double jeopardy.  A defendant is not deemed to have been prosecuted for an offense for purposes of the double jeopardy statute when such prosecution occurs in a court that lacks jurisdiction over the defendant or the offense charged.  We reject petitioner's contention that CPL 40.30(2)(a) applies only to subject matter jurisdiction and in personam jurisdiction, not to geographical jurisdiction.  The jury was properly instructed that it had to find at the outset whether Montgomery County had geographical jurisdiction with respect to the crimes charged and that, if the jury found that it lacked such jurisdiction, it was to cease its deliberations with respect to those crimes (citations omitted).  The jury did so with respect to the crimes charged in the first indictment and thus never considered the merits of those charges.  Because the Montgomery County prosecution with respect to those charges is a nullity, a retrial on those charges is not barred by statutory double jeopardy.[39]

The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."  In essence, the Double Jeopardy Clause protects a criminal defendant against three things:  (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense."[40]  This case implicates the first consideration.  The Supreme Court recently addressed the function and operation of the Double Jeopardy Clause.

> Our cases have recognized that the Clause embodies two vitally important interests. The first is the deeply ingrained principle that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may

---

[38] *People v. Cunningham*, 785 N.Y.S.2d 244, 246 (N.Y. App. Div. 2004), *lv. denied*, 829 N.E.2d 677 (N.Y. 2005) (Table), *rehrg denied*, 834 N.E.2d 1265 (N.Y. 2005) (Table).

[39] *Matter of Cunningham v. Dwyer*, 759 N.Y.S.2d 499, 501 (N.Y. App. Div.), *appeal dismissed*, 790 N.E.2d 271 (N.Y.) (Table), *reargument denied*, 796 N.E.2d 478 (N.Y. 2003) (Table).

[40] *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

be found guilty.  The second interest is the preservation of the finality of judgments.[41]

Cunningham spills considerable ink discussing when jeopardy attaches and whether the charges brought in Oneida County constitute the same acts or arose out of the same course of conduct as the charges brought in Montgomery County.  Cunningham does not provide a constitutional basis upon which the Appellate Division denied his Article 78 petition—that the Montgomery County Court lacked jurisdiction.[42]  The Supreme Court has long recognized the principle that a person is not put into jeopardy unless the tribunal before which the person is appearing has jurisdiction to try the question of guilt or innocence of the crimes of which that person is charged.[43]  Cunningham has not cited, and independent research by the Court has revealed no decision by the Supreme Court departing from or declining to recognize this principle.  The Appellate Division specifically found, based upon the factual findings of the Montgomery County jury, that the Montgomery County Court lacked jurisdiction under New York law.[44]  That decision is binding on this Court.[45]

---

[41] *Yeager v. United States*, 555 U.S. ___, 129 S. Ct. 2360, 2365–66 (2009) (internal quotation marks and citations omitted).

[42] Cunningham's arguments extend over some 32 pages in the memorandum accompanying the petition and 8 pages in his traverse.  Of those only 5 are devoted to the lack of jurisdiction issue, and that is directed at his fifth ground, that the Appellate Division misinterpreted or misapplied the New York statute, a point that he concedes in his traverse is not cognizable on federal habeas review.

[43] *See Serfass v. United States*, 420 U.S. 377, 391–92 (1975); *Grafton v. United States*, 206 U.S. 333, 345 (1907).

[44] This effectively renders moot Cunningham's arguments regarding whether the Montgomery County jury acquitted him.  Whether the Montgomery County jury acquitted or convicted Cunningham is irrelevant; Cunningham was not brought before a tribunal of competent jurisdiction, therefore he was never placed  in jeopardy.  It also renders moot Cunningham's other arguments, *e.g.*, when jeopardy attaches in a jury trial or whether the successive prosecution included the same acts or arose out of the same course of conduct.  The Court also notes that none of the four charges in the indictment on which the Montgomery County jury returned a verdict were included in the 41-count Oneida County indictment.

[45] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

Thus, because there is no decision of the Supreme Court binding on state courts with regard to the issue presented that either contradicts or undermines application of the lack of jurisdiction exception to the Double Jeopardy Clause, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[46]   Nor can this Court find that the Appellate Division unreasonably applied the correct legal principle to the facts of Cunningham's case within the scope of *Andrade–Williams–Schriro*; *i.e.*, the state court's decision was more than incorrect or erroneous; its application of clearly established federal law was objectively unreasonable.[47]   Cunningham is not entitled to relief under his second ground.

Ground 3:  Denial of Right to Confront Witnesses.

Cunningham contends that the trial court precluded him from challenging the motive of Morat, the victim of his alleged criminal acts.  More specifically, Cunningham complains that he was denied the opportunity to introduce a business plan that Cunningham alleges would establish that the complainant owed more money to Cunningham than Cunningham allegedly obtained under the charges for which he was being tried.  Cunningham also argues that he was improperly prevented from cross-examining Morat with respect to what Cunningham contends was a motive to lie—that Morat engaged in a scheme to strip certain entities of assets, file bankruptcy and deprive Cunningham of monies owed to him by Morat.

On direct appeal, the Appellate Division summarily rejected Cunningham's position holding "[d]efendant's contentions regarding evidentiary rulings of the court are not preserved for our review," citing, *inter alia*, N.Y. Criminal Procedure Law § 470.05[2], the New York "contemporaneous objection" rule.[48]

---

[46] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, ___, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[47] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[48] *People v. Cunningham*, 785 N.Y.S.2d 244, 246 (N.Y. App. Div. 2004) (citations omitted), *lv. denied*, 829 N.E.2d 677 (N.Y.) (2005) (Table), *rehrg denied*, 834 N.E.2d 1265 (N.Y. 2005) (Table).  N.Y Crim. Proc. Law § 470.05[2] provides:

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.  Such protest need not be in the form of an

(continued...)

Respondent contends that this ground is procedurally barred.  This Court agrees.  Under the adequate-and-independent-state-ground doctrine, federal courts may not review the judgment of a state court that "rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision."[49]  Because this doctrine applies on federal habeas review and because the state-law ground may be a procedural bar,[50] federal habeas courts often speak of an "adequate and independent procedural bar" to federal review of a claim or simply of a "procedurally barred" federal claim.  A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment "rests on a state law ground that is independent of the federal question and adequate to support the judgment."[51]  Where a decision "fairly appear[s] to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion," habeas courts presume that there is no adequate and independent state law ground supporting the judgment.[52]  Finally, "[s]tate courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims."[53]  Accordingly, a procedural bar is deemed "adequate" only if it is based on a rule that is "firmly established and regularly followed" by the state in question.[54]

---

[48](...continued)
"exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in reponse (*sic*) to a protest by a party, the court expressly decided the question raised on appeal.  In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

[49] *Harris v. Reed,* 489 U.S. 255, 260 (1989).

[50] *Id.* at 261-62.

[51] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[52] *Id.* at 735.

[53] *Hathorn v. Lovorn,* 457 U.S. 255, 263 (1982).

[54] *Ford v. Georgia,* 498 U.S. 411, 423–24 (1991).

The Second Circuit has laid out three factors to classify a decision as either fairly appearing to rest primarily on or interwoven with federal law, or as resting primarily on state procedural law:  (1) the face of the state court opinion; (2) whether the state court was aware of a procedural bar; and (3) the practice of state courts in similar circumstances.[55]  There is no question that the Appellate Division explicitly invoked the state procedural rule as barring review.  Looking behind the asserted state law grounds, as the Court must, the Court agrees with Respondent that the procedural ground cited by the Appellate Division, rejecting issues unpreserved for review, is firmly established and regularly followed by the New York courts.[56]

Even if the Court were to reach the issue on the merits, Cunningham would not prevail.  If a federal claim has not been adjudicated on the merits, AEDPA deference is not required.[57]  In that situation, conclusions of law and mixed questions of fact and conclusions of law are reviewed *de novo*.[58]  Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it.[59]  In so doing, because

---

[55] *Jimenez v. Walker*, 458 F.3d 130, 145 & n.16 (2d Cir. 2006).

[56] *See, e.g., Rhagi v. Artuz*, 309 F.3d 103, 106–07 (2d Cir. 2002).  The Court is not unmindful of the argument advanced by Cunningham that the Appellate Division improperly applied the failure to preserve the issue rule, *i.e.*, he did take proper exception to the ruling.  Whether or not the Appellate Division correctly applied New York law is, as noted above, an issue beyond the purview of this Court in a federal habeas proceeding.  This Court must assume the Appellate Division correctly applied the New York "preserved for review" rule, particularly in light of the fact that the New York Court of Appeals denied leave to appeal.  *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (determination of state law by a state intermediate appellate court is also binding in a federal habeas action); *see also West v. AT&T,* 311 U.S. 223, 237 (1940) ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.")

[57] *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003).

[58] *DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir. 2005).

[59] *See Dolphy v. Mantello*, 552 F.3d 236, 239–40 (2d Cir. 2009), citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006); *cf. Wiggins v. Smith*, 539 U.S. 510, 530–31 (2003) (applying a *de novo* standard to a federal claim not reached by the state court).

it is not clear that the state court did not do so, the Court assumes that the state court decided the claim on the merits and the decision rested on federal grounds.[60]  This Court gives the assumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[61]

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[62]  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[63]  Here, although Cunningham couches his argument in terms of his right to confront his accusers, in reality he is challenging an evidentiary ruling as to the scope of cross-examination of Morat.

The evidence Cunningham contends was erroneously excluded was intended to show that Morat owed Cunningham money in an amount in excess of the amount Cunningham was alleged to have misappropriated, giving Morat an ulterior motive to lie.  Specifically, Cunningham sought to introduce evidence that subsequent to making his criminal accusations against Cunningham, Morat engaged in fraudulent transfers, waited a year before filing bankruptcy in order to defraud Cunningham out of money Cunningham was owed by Morat (or a company owned by Morat).  He also sought to introduce evidence that another creditor had brought a fraud complaint against Morat alleging that he had been defrauded by Morat utilizing the same scheme. The trial court ruled against the introduction of that evidence on the ground that it was a collateral matter.

---

[60] *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the Harris–Coleman interplay); *see also Fama v. Comm'r of Correctional Svcs.*, 235 F.3d 804, 810–11 (2d Cir. 2000) (same).

[61] *Jimenez*, 458 F.3d at 145–46.

[62] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[63] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983).

Under New York law, evidence aimed at establishing motive may not be excluded because it is collateral.[64]   Under New York common law rules of evidence, however, "though relevant, evidence may nonetheless be excluded if its probative value is outweighed by other considerations, such as undue prejudice, delay, or needless presentation of cumulative evidence."[65]   Federal Rule of Evidence 403, codifying the common law rule, provides that otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Supreme Court has specifically upheld the application of those rules as being constitutional.

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.  See, *e.g.,* Fed. Rule Evid. 403; Uniform Rule of Evid. 45 (1953); ALI, Model Code of Evidence Rule 303 (1942); 3 J. Wigmore, Evidence §§ 1863, 1904 (1904). Plainly referring to rules of this type, we have stated that the Constitution permits judges "to exclude evidence that is 'repetitive . . ., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.' "  *Crane,* 476 U.S., at 689-690, 106 S.Ct. 2142 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); ellipsis and brackets in original).  See also *Montana v. Egelhoff,* 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (plurality opinion) (terming such rules "familiar and unquestionably constitutional").[66]

In applying Rule 403, the Supreme Court has noted:

This Court has acknowledged:

> "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules

---

[64] *People v. Hurdy*, 535 N.E.2d 250, 259 (N.Y. 1988) (*abrogated on other grounds* by *Carmell v. Texas*, 529 U.S. 513 (2000)).

[65] *Id*. at 267; see also *People v. Thomas*, 385 N.E.2d 584, 586 (N.Y. 1978) (applying the same rule to evidence of personal hostility by a witness).

[66] *Holmes v. South Carolina*, 547 U.S. 319, 326–327 (2006).

401 and 403. . . ." *United States v. Abel,* 469 U.S. 45, 54, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).

This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."  1 S. Childress & M. Davis, Federal Standards of Review § 4.02, p. 4-16 (3d ed.1999).  Under this deferential standard, courts of appeals uphold Rule 403 rulings unless the district court has abused its discretion.  See *Old Chief v. United States,* 519 U.S. 172, 183, n. 7, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).[67]

New York follows a similar rule vesting discretion in the trial judge.[68]

In this case, as Respondent points out, Cunningham was permitted to introduce evidence that Morat had allegedly promised Cunningham a 20 percent interest in Herkimer Pre-Cut, Morat had transferred title of Herkimer Pre-Cut to another entity, thereby rendering Cunningham's interest in Herkimer Pre-Cut worthless; Morat had removed records that allegedly would have assisted Cunningham in defending himself; and that Morat had filed bankruptcy.  Based on this evidence, counsel argued that Morat had concocted the charges against Cunningham in an effort to deprive Cunningham out of the monies that Morat owed him.  The Appellate Division, therefore, had a reasoned basis for concluding that the rejected evidence was cumulative on the issues of bias and motive to lie.

Consequently, this Court cannot say that the assumed decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[69]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade-Williams-Schriro*; *i.e.*, the state court's

---

[67] *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. ___, 128 S. Ct. 1140, 1145 (2008).

[68] *See People v. Scarola*, 525 N.E.2d 728, 732 (N.Y. 1988).

[69] 28 U.S.C. § 2254(d).

decision was more than incorrect or erroneous; its application of clearly established federal law was objectively unreasonable.[70]   Cunningham is not entitled to relief on his third ground.

Ground 4:  Prosecutorial Misconduct—Improper "Bolstering" of Witnesses.

Cunningham argues that in making the statement "[t]he people's case is this:  In order to believe the defendant's version of what happened, you would have to believe that every witness the People called was lying, including the police officer" at the end of her closing summation, the prosecutor impermissibly "bolstered the People's witnesses and denigrated the defense witnesses."  In rejecting Cunningham's argument, the Appellate Division held:

> We conclude that the court properly denied defendant's motion for a mistrial based upon the prosecutor's summation.  The prosecutor's statement that, "[i]n order to believe the defendant's version of what happened, you would have to believe that every witness the People called was lying, including the police officer . . . or had some hidden agenda" was fair commentary because defendant made witness credibility a central issue.[71]

"[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned."[72]  "The relevant question is whether the prosecutor's comments 'so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process.'"[73]  As Respondent points out, counsel for Petitioner called into question the integrity and believability of witnesses; consequently, the prosecutor may rebut.[74]

In this case, Cunningham points to a single instance of alleged prosecutorial misconduct. As the Supreme Court has noted "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone."[75]  In discussing the so-called "invited

---

[70] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[71] *People v. Cunningham*, 785 N.Y.S.2d 244, 246 (N.Y. App. Div. 2004) (citations omitted), *lv. denied*, 829 N.E.2d 677 (N.Y.) (2005) (Table), *rehrg denied*, 834 N.E.2d 1265 (N.Y. 2005) (Table).

[72]  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations and internal quotation marked omitted).

[73] *Darden*, at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, [643] (1974)); *Jenkins v. Artuz*, 294 F.3d 284 (2d Cir. 2002).

[74] *See United Sates v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005).

[75] *United States v. Young,* 470 U.S. 1, 11 (1985).

response" or "invited reply" rule the Supreme Court, while noting that it "should not be read as suggesting judicial approval of—or encouragement—of response-in-kind," has held the issue is whether "the prosecutor's 'invited response,' taken in context, unfairly prejudiced the defendant."[76]  If the prosecutor's remarks are "invited," to warrant reversing a conviction the response must do no more than respond substantially to right the scale.[77]  As the Second Circuit has noted:

> Newton submits that prejudicial comments made by the prosecutor in summation deprived him of his due process right to a fair trial.  His burden on this claim is a heavy one.  As the Supreme Court has cautioned, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone."  *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *see United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir.1992) ("It is a 'rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required.").  An aggrieved party must show more than mere trial error to secure reversal; he must demonstrate misconduct so egregious that, when viewed in the context of the entire trial, it substantially prejudiced him.  *See United States v. Shareef*, 190 F.3d 71, 78 (2d Cir.1999); *United States v. Perez*, 144 F.3d 204, 210 (2d Cir.1998).[78]

Cunningham has failed to shoulder that burden.

Second, to characterize the prosecutor's statement as "bolstering" or "vouching" for the credibility of the People's witnesses overstates the significance and impact of the statement.  First, the comment did not constitute "vouching."   The prosecutor was not expressing her personal belief in the credibility of the People's witnesses, nor can the statement be characterized as conveying to the jury an impression that evidence known to the prosecutor but  not presented to the jury supported the testimony of the People's witnesses.  All the prosecutor was telling the jury was that *the jury* would have to determine that the People's witnesses were lying.  As the Supreme Court has explained:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but

---

[76] *Id*. at 12.

[77] *Id*. at 12–13.

[78] *United States v. Newton*, 369 F.3d 659, 680 (2d Cir. 2004) (footnote omitted).

known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.[79]

Cunningham argues that the reference to the police officer improperly implied that the testimony of the police officer was more worthy of belief than that of other witnesses.  Although the Court finds it somewhat stretching to construe the comment as so implicating, any error could have been ameliorated, if not cured, by an instruction that the testimony of law enforcement officers was to be given the same consideration and accorded the same weight as the testimony of any other witness.[80]  The record does not reflect that any such instruction was requested or given.

While the Second Circuit has been critical of the use of the word "lie" in summation, it has reversed only in extreme cases.[81]  Cunningham has not cited a decision of the Supreme Court that has ever held that a single relatively innocuous statement by a prosecutor as in this case constituted prosecutorial misconduct.  Nor, has independent research by this Court found such a decision.

Consequently, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[82]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade–Williams–Schriro*; *i.e.*, the state court's

---

[79] *Young*, at 18–19.

[80] *See United States v. Bethancourt*, 65 F.3d 1074, 1080 (3rd Cir. 1995).

[81] *See United States v. Thomas*, 377 F.3d 232, 245 (2d Cir. 2004) (discussing cases). Cunningham's reliance on *United States v. Venable*, 269 F.3d 1086 (D.C. Cir. 2001) is misplaced on three bases.  First, it is a decision of a court of appeals, not the Supreme Court.  Second, even if this Court could rule on the basis of a circuit decision, it is a decision of a circuit court that is not binding on this Court.  Third, *Venable* is not only factually distinguishable but essentially eviscerates Cunningham's argument in that, as Respondent correctly notes, the D.C. Circuit ultimately found that this single isolated comment did not prejudice the defendant.  *Venable*, 269 F.3d at 1092.

[82] 28 U.S.C. § 2254(d).

decision was more than incorrect or erroneous; its application of clearly established federal law was objectively unreasonable.[83]   Cunningham is not entitled to relief on his fourth ground.

  Ground 5:  Double Jeopardy (State Law).

  Cunningham argues that his subsequent prosecution in Oneida County following the trial in Montgomery County violated the double jeopardy provisions of New York Criminal Procedure Law § 40.30(2)(a).  That is clearly and unequivocally purely a question of state law beyond the purview of this court in a federal habeas proceeding.[84]  Cunningham concedes this point in his traverse.  Cunningham is not entitled to relief under his fifth ground.


## V.  CONCLUSION AND ORDER

  Cunningham is not entitled to relief on any ground raised in his petition.

  **IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

  **IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[85]  To the extent the issues raised in the petition were addressed by the Appellate Division, Fourth Department, no reasonable jurist could find that the decision was "objectively unreasonable."  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

  The Clerk of the Court is to enter final judgment accordingly.


Dated:  September 22, 2009

           /s/ James K. Singleton, Jr.

---

[83] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[84] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) overruled on other grounds by *Ring v. Arizona*, 536 U.S. 584 (2002).

[85] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

HON. JAMES K. SINGLETON, JR.
United States District Judge